UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS E. MOORE,

        Petitioner,

                                         CASE NO. 10-cv-12338

v.                                       HONORABLE LAWRENCE P. ZATKOFF

MARY BERGHUIS,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter is pending before the Court on petitioner Thomas E. Moore's habeas corpus petition, which challenges a state conviction for criminal sexual conduct in the first degree. *See* MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen). Petitioner raises claims regarding his right to present a defense, the trial court's evidentiary rulings, the prosecutor, his attorneys, the trial judge, and the weight of the evidence adduced at trial. Respondent Mary Berghuis argues in an answer to the petition that several of Petitioner's claims are procedurally defaulted and barred from substantive review and that Petitioner's remaining claims lack merit. The Court agrees. Consequently, the habeas petition must be denied.

**I. Background**

Petitioner was charged in Oakland County, Michigan with one count of first-degree criminal sexual conduct. The charge arose from a nine-year-old girl's allegation that Petitioner touched her genital area with his mouth and tongue after an outing at a lake on July 13, 2005. Petitioner was

tried before a jury in Oakland County Circuit Court where the complainant ("A.T.")[1] testified that,

> [w]hile babysitting [her] in July 2005, defendant took her to the beach. She testified that thereafter, while in defendant's truck, he pulled her bathing suit bottoms down and "started French kissing [her] private" with his mouth and tongue. Defendant stopped when AT began to cry and told her that if she told anyone about what he had done, he would go to jail and would no longer be able to see his daughter.

*People v. Moore*, No. 273238, at *1 (Mich. Ct. App. Dec. 13, 2007).

A.T. disclosed the incident to her mother, to Oakland County Deputy Sheriff Georgia Willyard, and to medical personnel that same day. The police did not send A.T. to a child advocacy center for a forensic interview because they thought that Deputy Willyard had done a thorough job of interviewing A.T. and that another interview was unnecessary. The physician who examined A.T. testified that A.T. had some redness in her genital area and that A.T. complained of some pain when the physician took swabs of her vaginal and labial areas.

The attorney who initially represented Petitioner testified that, on July 14, 2005, he met with Petitioner and Petitioner's mother, who placed a grocery bag with a small bathing suit inside it on his desk. On or about July 26, 2005, he contacted the prosecutor, and on or about August 2, 2005, he gave the bathing suit to a detective who came to his office. The parties stipulated that a serological analysis of items submitted to the state police did not reveal the presence of saliva, hair, or anything else of evidentiary value.

Petitioner did not testify, but he presented several witnesses, including the examining physician who testified that there could be several causes for the redness she observed on A.T.'s genital area. A forensic scientist established that there was no physical evidence linking Petitioner to the crime, and a clinical psychologist testified about proper forensic interviewing protocol,

---

[1] The Court will refer to the complainant by her initials.

suggestibility, and reasons why a person might fabricate an allegation. Other witnesses testified that they did not observe Petitioner acting inappropriately toward A. T. on the day of the crime and that Petitioner had never shown an interest in young girls.

The trial court instructed the jury on first- and second-degree criminal sexual conduct, but declined to instruct the jury on assault and battery as a lesser-included offense. On June 30, 2006, the jury found Petitioner guilty, as charged, of first-degree criminal sexual conduct. The trial court sentenced Petitioner as a habitual offender to imprisonment for twenty-five to fifty years.

In an appeal of right, Petitioner argued through counsel that (1) the trial court deprived him of his constitutional right to present a defense by refusing to admit certain evidence, (2) the trial court denied him a fair trial by permitting the prosecution to elicit hearsay testimony regarding a prior act of child molestation by Petitioner, and (3) the cumulative effect of the trial errors deprived him of a fair trial. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *See id.* On May 27, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Moore*, 748 N.W.2d 834 (Mich. 2008) (table).

Petitioner subsequently filed a motion for relief from judgment in which he claimed that his trial and appellate attorneys were ineffective, the prosecutor engaged in misconduct, the trial court was biased, and the verdict was against the great weight of the evidence. The trial court concluded that Petitioner had failed to satisfy the "good cause" and "actual prejudice" prongs of Michigan Court Rule 6.508(D)(3). Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal the trial court's decision because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Moore*, No. 292271 (Mich. Ct. App.

3

Sept. 1, 2009); *People v. Moore*, 780 N.W.2d 822 (Mich. 2010) (table).

On June 14, 2010, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. His grounds for relief, as set forth and numbered in his habeas petition,[2] are:  (1) the trial court deprived him of his right to present a defense by refusing to admit certain evidence; (2) the trial court denied him a fair trial by allowing the prosecution to elicit hearsay testimony about a prior act of child molestation; (3) the cumulative effective of errors deprived him of a fair trial; (4) appellate counsel was ineffective; (5) the prosecutor engaged in misconduct; (6) trial counsel was ineffective; (7) the trial judge was biased; (8) the jury's verdict was against the great weight of the evidence; and (9) he is entitled to an evidentiary hearing.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[2]   The claims are numbered differently in Petitioner's Memorandum of Law in Support of the Habeas Petition.

4

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## III. Discussion

The Court will begin its discussion by analyzing the three claims that Petitioner raised on direct review of his conviction. The Michigan Court of Appeals adjudicated most of these claims on the merits[3] and rejected them.

---

[3] The Court of Appeals reviewed two aspects of Petitioner's claim about a prior act of child molestation for "plain error" because Petitioner did not raise the argument, or object on the same basis, in the trial court. Respondent, however, has not argued that the claim is procedurally defaulted, and the Court is not required to raise the issue *sua sponte*. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (stating that "[a] court of appeals is not 'required' to raise the issue of procedural default *sua sponte*"); *see also Flood v. Phillips*, 90 F. App'x 108, 114 (6th Cir. 2004) (explaining that the State was required to assert procedural default as an affirmative defense in its responsive pleading and that it waived the defense when it failed to do so). Even if the claim is procedurally defaulted, procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010). Thus, the Court will review the substantive merits of Petitioner's first three claims rather than analyze whether certain portions of the claims are procedurally defaulted.

**A.  The Right to Present a Defense**

Petitioner alleges that the trial court deprived him of his right to present a defense by refusing to admit certain evidence.  The Michigan Court of Appeals rejected all of Petitioner's arguments regarding his right to present a defense.

**1.  Clearly Established Federal Law**

State court rulings on the admission or exclusion of evidence generally may not be questioned in a federal habeas corpus proceeding.  *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).  Petitioner, however, alleges more than an error in the application of the Michigan Rules of Evidence.  He contends that the trial court's ruling deprived him of his constitutional right to defend himself.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Nevertheless, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (quotation marks and citations omitted) (end bracket in original).

**2.  Application**

6

### a. Third Party Culpability and Influence on A.T.

Petitioner alleges that the trial court should have permitted him to present evidence that a third party (Danny Lovelace) assaulted A.T. and that someone influenced A.T. to lie about what happened to her.  Petitioner raised this issue before trial in the context of a motion for an adjournment of the trial date and a motion for appointment of an investigator.  The trial court pointed out at a hearing on the motion that there was nothing in the police investigation or a prior, related child protective proceeding that indicated someone else committed the crime or was present during the incident.  The trial court denied Petitioner's motions after concluding that the matter was an issue of credibility to be determined by the jury.  (Trial Tr. vol. 1,  4-19, June 26, 2006.)

The Michigan Court of Appeals adjudicated the issue on direct appeal and determined that evidence of Danny Lovelace's possible culpability was properly excluded because it was speculative and based on mere suspicion.  The record supports this conclusion.  A.T. testified that no one else was in the truck with her and Petitioner when the crime occurred (*id*. at 270), and the deputy sheriff who interviewed A.T. testified that she had no information about Danny Lovelace or any man other than Petitioner being involved in the crime.  The deputy sheriff claimed that she had no reason to inquire or investigate whether another man was involved.  (Trial Tr. vol. 2, 388-89, June 27, 2006.)

Oakland County Deputy Sheriff Kenneth Alderman also testified that no one else was mentioned as being involved in the crime.  Alderman thought that only Petitioner and A.T. were involved in the incident, and he stated that the police did not question any other adult men about the incident because they had only one suspect.  (*Id*. at 443-45, 468.)  Petitioner himself states that "any evidence of Lovelace's possible culpability was merely speculative and based on mere suspicion." Memorandum of Law in Support of Pet. for Writ of Habeas Corpus, at 34.

7

Furthermore, Petitioner was not entirely precluded from raising the defense of third-party culpability.  In the words of the Michigan Court of Appeals,

> defense counsel was permitted to explore the notion during trial that Lovelace may have sexually assaulted AT.  Counsel questioned AT regarding whether Lovelace lived with she (sic) and her mother at the time of the offense, but AT did not remember.  In addition, AT's mother testified that she and Lovelace broke up in early May 2005, and that he was not living with her on July 13, 2005, the date of the offense.  Counsel also elicited from AT's mother that the police never requested a DNA sample from Lovelace, never interviewed him regarding AT's allegations, and never asked AT's mother if AT had been abused previously.  Defense counsel also inquired of Deputy Georgia Willyard whether she investigated Lovelace or any other persons who may have had access to AT.  Willyard responded that she did not.

*Moore*, Mich. Ct. App. No. 273238, at 2-3.  This Court concludes that the trial court did not deprive Petitioner of his constitutional right to defend himself by limiting the testimony about Danny Lovelace and the possibility that someone influenced A.T. to falsify her allegations.

### b.  Evidence of A.T.'s Home Environment

Petitioner claims that the trial court deprived him of the right to produce evidence of sexual conduct, pornography, drugs, and violence in A.T.'s home.  The trial court correctly concluded that some of the proposed evidence, such as what A.T.'s mother did for a living and whether Danny Lovelace had assaulted A.T.'s mother, was not relevant at Petitioner's trial.  (Trial Tr. vol.1, 51-52, June 26, 2006; Trial Tr. vol. 2, 319-20, June 27, 2006.)  And evidence that A.T. may have been exposed to pornography, drugs, violence, and sexual conduct in the home was speculative.  Defense counsel stated only that people in A.T.'s household "*might* be more inclined to view pornography at home," "*may* be viewing pornography in front of their children," and "*may* be performing sexual acts in front of their children."  (Trial Tr. vol.1, 49, June 26, 2006) (emphasis added).  The proposed evidence had the potential to confuse the issues or mislead the jury.

And, once again, Petitioner was not entirely precluded from raising the issue, as noted by the

8

Michigan Court of Appeals:

> [D]efense counsel elicited from AT's mother that the police never asked her whether
> AT had access to pornography in the home, whether AT witnessed any sex acts being
> performed, or whether there was drug use in the home. Accordingly, counsel was
> permitted to explore these issues to some extent and argued during closing argument,
> in accordance with defendant's expert witness testimony, that these factors could
> have prompted AT to make a false accusation.

*Moore*, Mich. Ct. App. No. 273238, at 3. The Court concludes that the trial court did not deprive

Petitioner of his right to defend himself by limiting his ability to elicit testimony about A.T.'s home

environment.

### c. Evidence of Petitioner's Sexual Morals

Petitioner's final allegation about the trial court's exclusion of evidence is that he was not

permitted him to present evidence of his good sexual character and morals. The trial court ruled that

Petitioner could offer testimony of his good sexual morals through testimony about his reputation

or by testimony in the form of an opinion, but that he could not elicit testimony about specific

incidents. (Trial Tr. vol. 1, 33, June 26, 2006.) In other words, he could not elicit testimony that

he did not commit a similar act of criminal sexual conduct on someone. (Trial Tr. vol. 2, 312, June

27, 2006.)

The Michigan Court of Appeals determined that the trial court did not err in excluding

specific instances of conduct. The Court of Appeals stated that evidence of specific instances of

conduct or nonconduct is not admissible under Michigan Rule of Evidence 405(b) when, as in this

case, the defendant's character or a trait of character is not an essential element of the charge, claim,

or defense.

Even if the state courts erred in their rulings, Petitioner was permitted to elicit testimony that

he had never shown a sexual interest in young girls (Trial Tr. vol. 2, 520, June 27, 2006) and had

9

not been observed doing anything inappropriate with A.T. (Trial Tr. vol. 3, 567, 744-45, June 29, 2006).  This opinion and reputation testimony, when combined with the other testimony that Petitioner presented through expert witnesses, was sufficient to establish Petitioner's defense that he did not commit the charged crime.  Thus, his constitutional right to present a defense was not violated.

## B.  Hearsay Evidence of a Prior Act of Child Molestation

Petitioner alleges that the trial court erred by allowing the prosecution to elicit hearsay testimony about a prior act of child molestation he supposedly committed.  This claim arose when defense counsel asked A.T.'s mother on cross-examination whether she had heard of anything that would lead her to believe Petitioner had an interest in children.  The mother answered that, a few months ago, she "heard something new."  Defense counsel did not pursue the issue, but on redirect examination, the prosecutor asked A.T.'s mother what she had heard.  The mother responded that she had been told that, eight or nine years ago, Petitioner had gone fishing with two men, a twelve-year-old girl, and the girl's brother.  Petitioner allegedly told the brother to go elsewhere and then made the little girl play with his penis.  (Trial Tr. vol. 2, 355-56, June 27, 2006.)

The Michigan Court of Appeals determined that this testimony was not hearsay because it was not offered to prove the truth of the matter.  The Court of Appeals went on to say that the evidence was admissible under Michigan Rule of Evidence 405(a) as evidence of a specific instance of conduct involving Petitioner's character.

The state court's interpretation of state law binds this Court, *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005), and even if the state court erred in applying its own rules, the alleged violation of the

10

Michigan Rules of Evidence is not a cognizable claim on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). Furthermore,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (concluding that the petitioner's disagreement with the state court's ruling on "other acts" evidence involved no constitutional dimension and, therefore, was not cognizable on federal habeas review). As no Supreme Court decision bars the use of propensity evidence on constitutional grounds, the state courts' rejection of this claim was not contrary to Supreme Court precedent.

## C.  The Cumulative Effect of Errors

Petitioner alleges that the cumulative effective of trial errors deprived him of a fair trial and warrants a reversal of his conviction. The Michigan Court of Appeals ruled that, because it found no individual error, there could be no cumulative effect of errors denying Petitioner a fair trial. This Court finds no merit in Petitioner's claim, because a claim that the cumulative effect of errors rendered the petitioner's trial fundamentally unfair is not cognizable on habeas review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)), *cert. denied sub nom Sheppard v. Robinson,* __ U.S. __, 132 S. Ct. 2751 (2012). Petitioner therefore has no right to relief on the basis of his claim about the cumulative effect of trial errors.

## D.  The Remaining Claims (claims four through nine)

Petitioner's remaining claims allege that trial and appellate counsel were ineffective, the

prosecutor committed misconduct, the trial judge was biased against him, the verdict was against

the great weight of the evidence, and he is entitled to an evidentiary hearing. Respondent asserts

that these claims are procedurally defaulted because Petitioner raised them for the first time in his

motion for relief from judgment and subsequent appeal.

### 1. Procedural Default

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*,

522 U.S. at 89. The doctrine of procedural default prohibits a federal court from reviewing the

merits of a petitioner's claims, including constitutional claims, if the state court declined to hear the

claims because the prisoner failed to abide by a state procedural rule. *Martinez v. Ryan*, __ U.S. __,

__, 132 S. Ct. 1309, 1316 (2012).

A habeas petitioner procedurally defaults a claim if:

> (1) the petitioner fails to comply with a state procedural rule; (2) the
> state courts enforce the rule; (3) the state procedural rule is an
> adequate and independent state ground for denying review of a
> federal constitutional claim; and (4) the petitioner cannot show cause
> and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (quoting *Tolliver v. Sheets*, 594 F.3d 900,

928 n. 11 (6th Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 605 (2010) (citing *Maupin v. Smith*, 785

F.2d 135, 138 (6th Cir. 1986)).

The applicable state procedural rule here is Michigan Court Rule 6.508(D), which reads in

relevant part:

> **(D) Entitlement to Relief.** The defendant has the burden of establishing
> entitlement to the relief requested. The court may not grant relief to the defendant
> if the motion
>
> . . . .

12

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates
>
> > (a) good cause for failure to raise such grounds on appeal . . . , and
> >
> > (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner raised claims four through nine about the prosecutor, counsel, the trial judge, the weight of the evidence, and an evidentiary hearing for the first time in his motion for relief from judgment and subsequent appeals. With the exception of his claim about appellate counsel (claim four), he could have raised the claims on direct appeal, and his failure to do so violated Rule 6.508(D)(3).[4] Thus, the first element of procedural default is satisfied as to claims five through nine.

The second element of procedural default requires a determination of whether the state courts actually enforced Rule 6.508(D)(3). The trial court, the Michigan Court of Appeals, and the Michigan Supreme Court rejected claims five through nine for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). The brief appellate orders citing Rule 6.508(D) are not "explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d at 289. The Court therefore must look to the last reasoned state court opinion to determine the basis for the state court's rejection of Petitioner's claim. *Id.* at 291. The trial court issued a reasoned opinion on Petitioner's claims and stated that it could not grant relief because Petitioner had failed to

---

[4] Petitioner's fourth claim about appellate counsel is not procedurally defaulted because Petitioner could not be expected to raise that claim on direct appeal while he was represented by the attorney. His motion for relief from judgment was the first time he could raise the claim. *Whiting v. Burt*, 395 F.3d 602, 610 n.6 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004); *McFarland v. Yukins*, 356 F.3d 688, 713 (6th Cir. 2004).

demonstrate "good cause" and "actual prejudice" under Rule 6.508(D)(3). Thus, the last state court to issue a reasoned opinion actually enforced Rule 6.508(D)(3).

The third element of procedural default is whether the state procedural rule in question is an adequate and independent state ground for denying review of a federal constitutional claim. "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, __ U.S. __, __, 131 S. Ct. 1120, 1127 (2011) (citing *Beard v. Kindler*, 558 U.S. 53, __, 130 S. Ct. 612, 618 (2009)). Rule 6.508(D) has been firmly established and regularly followed since 1989 when it went into effect, and the trial court's decision on Petitioner's claims rested entirely on state law. Therefore, Rule 6.508(D) was an adequate and independent state ground foreclosing review of Petitioner's constitutional claims.

The first three elements of procedural default are satisfied here. Consequently, claims five through nine are procedurally defaulted unless Petitioner can show "cause for [his] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Guilmette v. Howes*, 624 F.3d at 290.

**2. "Cause" for the Procedural Default**

Petitioner alleges in claim four that his appellate attorney was ineffective for failing to raise all his claims on direct appeal. "Failure of appellate counsel to raise an issue on appeal can amount to constitutionally ineffective assistance." *Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011), *cert. denied*, __ U.S. __, 133 S. Ct. 107 (2012). And, "[i]neffective assistance of appellate counsel can constitute cause to excuse a procedural default." *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 2117 (2011). But to demonstrate that appellate

14

counsel was ineffective, Petitioner must show (1) that his attorney unreasonably failed to discover and raise nonfrivolous issues on appeal, and (2) a reasonable probability that he would have prevailed on appeal were it not for his attorney's unprofessional errors. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *Thompson v. Warden, Belmont Corr. Inst*., 598 F.3d 281, 285 (6th Cir. 2010). The Court looks to Petitioner's underlying claims to determine whether appellate counsel was ineffective for failing to raise those claims on appeal.

### a. The Prosecutor

Petitioner asserts that the prosecutor's remarks during closing arguments deprived him of a fair trial.

### i.  A.T.'s Testimony

Petitioner faults the prosecutor for saying that A.T.'s testimony was consistent with the disclosure she made to her mother, to the police, and to medical personnel. The actual comments were:

> [Y]ou heard from Dr. Madden, you heard from [nurse] Melanie Pieknik, who examined this child. She tells them exactly what she had told her mom, exactly what she had told the police of what happened.
>
> Nothing changed. There wasn't one inconsistency.

(Trial Tr. vol. 4, 810, June 30, 2006.)

Petitioner contends that the prosecutor lied to the jury by claiming that A. T.'s version of the facts was consistent. To support this allegation, Petitioner points to minor inconsistencies in A.T.'s testimony regarding when and where the alleged crime occurred, her telephone call to her mother on the day of the incident, and the timing of her disclosure to her mother.

The only state court to address this issue was the trial court on post-conviction review. The court concluded that the prosecutor properly argued the evidence and that Petitioner was not denied a fair trial as a result.

Prosecutors may not misrepresent the evidence, assert facts that were never admitted in evidence, or state that the victim's story never changed if there was no evidence to support such a factual assertion. *Washington v. Hofbauer*, 228 F.3d 689, 700-01 (6th Cir. 2000). In this case, however, the prosecutor appears to have been saying that A.T. did not deviate from her version of the essential facts concerning what Petitioner did to her. In that regard, the prosecutor did not misstate the facts. A.T. testified at trial that Petitioner pulled down the bottom of her bathing suit and "French kissed" her private part. She explained that Petitioner had used his tongue and mouth to kiss the body part where she "peed." (Trial Tr. vol. 1, 273-74, June 26, 2006.) She claimed that she told the same story to her mother, to the police, and at a prior court proceeding. (*Id*. at 282, 299.)

The record does not reflect precisely what A.T. told the police, except that she identified Petitioner as the perpetrator of the offense. (Trial Tr. vol. 2, 444, June 27, 2006). A.T.'s mother, however, testified that A.T. pointed to her vagina and stated that Petitioner had touched and kissed her "down there." (*Id*. at 331, 333.) A.T. also informed the examining physician and a nurse that Petitioner had pulled down her bathing suit and kissed and licked her "down there." The physician and nurse interpreted this to mean that Petitioner kissed her genital area. (*Id*. at 429, 477-78, 485.) To conclude, the evidence supported the prosecutor's factual assertion that A.T.'s story was consistent over time.

Even if the prosecutor incorrectly insinuated that there was not a single inconsistency in

16

A.T.'s story, defense counsel did not object to the comments.  Thus, the state appellate courts would have had to review Petitioner's claim for "outcome-determinative, plain error."  *People v. Unger*, 749 N.W.2d 272, 292 (Mich. Ct. App. 2008).  The trial court, moreover, instructed the jurors that it was their job to decide the facts and that the attorneys' statements and arguments were not evidence.  (Trial Tr., vol. 4, 830, 832, June 29, 2006).  In light of the trial court's instructions, the lack of a contemporaneous objection, and the fact that A.T.'s story on the essential facts of the crime was consistent over time, appellate counsel was not ineffective for failing to raise Petitioner's prosecutorial-misconduct claim on direct appeal.

### ii. Hiring an Attorney

Petitioner also criticizes the prosecutor for saying that Petitioner hired an attorney after he learned that the police were looking for him.  The prosecutor said:

> [The police] execute a search warrant, don't find the bathing suit that they're looking for in the bedroom that they were looking for it.  They leave him a copy of the search warrant telling him hey, guess what, we were here, here's what we were looking for, here are the allegations.

> What does he do?  The next – that morning, early morning hours the next day, whatever point he gets back home he doesn't go to the police and say look, look what I found, this bathing suit you were looking for, guess what, I found it here you go.  These allegations are ridiculous.  Here, here's the bathing suit that you're looking  for.  He doesn't do that.

> He goes in the very next morning, hires an attorney with his mother, hands over the bathing suit to the attorney; I submit to you, in the hopes that the attorney doesn't have to turn it over, thinking that the attorney doesn't have to turn it over.

(Trial Tr. vol. 4, 811-12, June 30, 2006.)  Petitioner contends that these comments violated his right to remain silent.

A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt.  Neither

17

may she suggest to the jury that a defendant hires an attorney in order to generate an alibi, "take[ ] care of everything" or "get ... [his] story straight." Such statements strike at the core of the right to counsel, and must not be permitted.

*Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990).

In this case, however, the prosecutor did not make repeated references to Petitioner's decision to hire an attorney, *cf. Sizemore*, 921 F.2d at 669-71, and her comments were based on testimony provided by Petitioner's first attorney, who explained to the jury how he happened to be retained. The attorney testified that, on July 14, 2005, someone consulted him about representing Petitioner as a result of a criminal charge filed against Petitioner. He met with Petitioner and Petitioner's mother, who placed a grocery shopping bag with a small bathing suit inside of it on his desk. Petitioner or his mother retained him to represent Petitioner in the criminal matter, and he continued to represent Petitioner until Petitioner's trial attorney replaced him. (Trial Tr. vol. 2, 487-93, June 27, 2006.)

Furthermore, Petitioner's trial attorney responded to the prosecutor's comments by explaining to the jury during his closing argument that it was Petitioner's mother who delivered the bathing suit in evidence to Petitioner's first attorney and that "people don't know what to do with this kind of situation. Give it to the lawyer, the person that knows." (Trial Tr. vol.4, 817, June 30, 2006.) Finally, as previously noted, the trial court instructed the jurors that the attorneys' statements and arguments were not evidence. (*Id.* at 832.)

In light of the trial court's instructions, the first attorney's testimony about being retained and provided with a bathing suit, and trial counsel's explanation for why people consult attorneys, appellate counsel was not ineffective for failing to raise a claim about the prosecutor's reference to Petitioner hiring an attorney.

18

### b. Trial Counsel

Petitioner alleges next that his two attorneys deprived him of effective assistance of counsel. Petitioner maintains that his first attorney failed to return his fee and withheld the bathing suit that Petitioner's mother delivered to him.  Petitioner claims that his second attorney was unprepared for trial,  had no theory or defense, suggested a speculative theory of third-party culpability, and opened the door to prejudicial testimony about a prior allegation of child molestation.  The trial court rejected these claims in its order denying Petitioner's motion for relief from judgment.

An attorney is constitutionally ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. at 687.  The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  To demonstrate that counsel's performance prejudiced the defense, a defendant "must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.  The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

As the trial court recognized, the first defense attorney's failure to return Petitioner's money may have been a basis for a civil lawsuit or grievance, but it is not a basis for a claim of ineffective assistance of counsel.  And even though the attorney apparently did not submit the bathing suit in evidence to the police immediately, Petitioner has failed to show how he was prejudiced by counsel's conduct.  According to the forensic scientist who testified, there was no evidence on the bathing suit that linked Petitioner to the crime, and it is mere speculation that the scientist would

19

have found evidence of another person's DNA on the bathing suit if defense counsel had submitted the bathing suit to the police sooner.

Petitioner also has failed to show that his second attorney, the one who represented him at trial, was ineffective. Although Petitioner claims that the attorney was unprepared, the record indicates that the attorney vigorously defended Petitioner throughout the trial. He raised objections, cross-examined most of the witnesses, made motions, and argued to the jury that Petitioner was guilty of bad judgment for being alone with A.T., but that he did not commit the charged crime. In support of this theory, he presented witnesses who testified either that Petitioner had never shown a sexual interest in young girls (Trial Tr. vol. 2, 520, June 27, 2006) or that they did not observe Petitioner do anything inappropriate with A.T. (Trial Tr. vol. 3, 567, 744-45, June 29, 2006.)

Trial counsel also produced expert witnesses. He elicited testimony from the physician who examined A.T. that the redness which the physician had observed on A.T.'s genital area could have been caused by a number of other factors, including a wet bathing suit with sand in it, and that the physician had made no determination as to whether the redness was the result of a sexual assault. (Trial Tr. vol. 2, 501-03, June 27, 2006.)

Defense counsel also elicited testimony from a clinical psychologist, who testified about the importance of proper forensic interviewing protocol, about suggestibility, and about why people sometimes fabricate allegations. (Trial Tr. vol. 3, 629-48, June 29, 2006.) Additionally, he elicited testimony from a forensic scientist that no bodily fluids were detected on the bathing suit in evidence and that there was no physical evidence linking Petitioner to the crime in the "rape kit" prepared by medical personnel during their examination of A.T. (*Id*. at 731, 735.) Petitioner has not alleged another defense that his attorney could have raised.

20

Petitioner blames his attorney for opening the door to prejudicial testimony regarding an unrelated incident of child molestation, but the testimony was unexpected. As previously explained, defense counsel asked A.T.'s mother whether she had heard of anything that would lead her to believe Petitioner had an interest in children. The mother answered, "[A] couple months ago I heard something new." Defense counsel then inquired about another matter, but on re-direct examination by the prosecutor, A.T.'s mother stated that, eight or nine years ago, Petitioner made a girl play with his penis. (Trial Tr. vol. 2, 355-56, June 27, 2006.) Because trial counsel could not have anticipated this response, trial counsel's question to A.T.'s mother did not amount to deficient performance.

Petitioner has failed to show that his trial attorneys' performances were deficient and that the allegedly deficient performances prejudiced the defense. Therefore, appellate counsel was not ineffective for failing to raise a claim about Petitioner's first and second attorneys.

### c. The Trial Judge

Petitioner alleges that the trial court was biased against him as a result of presiding over a prior matter. As additional evidence of bias, Petitioner states that the trial court overruled his objections at trial and denied his motions, including his motion for appointment of an investigator, his motion for an adjournment of trial until the lead detective became available, his motion to have the jury view his truck, his motion for a directed verdict of acquittal, and his request for a jury instruction on the lesser-included offense of assault and battery.

The trial court addressed the matter of judicial bias in its written opinion on Petitioner's motion for relief from judgment. The court rejected the claim because Petitioner had not shown that any of the court's rulings were incorrect or indicative of bias or partiality and because a claim of bias cannot be based solely on a decision in due course of judicial proceedings.

21

Petitioner had a constitutional right to a fair trial "before a judge with no actual bias against [him] or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). But "a judge's misconduct at trial may be 'characterized as bias or prejudice' only if 'it is so extreme as to display clear inability to render fair judgment,' so extreme in other words that it 'display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (quoting *Liteky v. United States*, 510 U.S. 540, 551, 555 (1994)).[5] The question is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

Petitioner has not identified the civil matter that allegedly caused the trial court to be biased against him. Moreover, a judge is not recusable for bias or prejudice as a result of what the court learned during the course of the proceedings, *Liteky v. United States*, 510 U.S. at 551, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality" claim. *Id.* at 555. Furthermore, nothing in the trial court's judicial rulings suggest that the trial court was biased. The court sustained a number of defense counsel's objections at trial and overruled some of the prosecutor's objections.

The court also offered logical reasons for denying Petitioner's motions. Petitioner wanted an adjournment of the trial date and appointment of an investigator because the lead detective was

---

[5] Although *Liteky* "addresses the statutory recusal standards for federal judges, *see* 28 U.S.C. § 455, [the Sixth Circuit Court of Appeals] has relied on the decision in assessing judicial-bias claims under the Due Process Clause . . . ." *Lyell v. Renico*, 470 F.3d at 1186 (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)). And "[e]ven though Liteky involved statutory, as opposed to constitutional, interpretation," the *Liteky* standard may be applied in habeas corpus cases. *See id.*

unavailable. He also wanted to investigate the possibility of third-party culpability and A.T.'s background, home life, and psychological records. The trial court stated that there was no indication in the prior child protective proceeding to indicate that anyone else committed the crime and that A.T.'s psychological records would not be accessible to an investigator. The trial court also determined that the lead detective was not a critical witness. (Trial Tr. vol. 1, 17-19, 37-38, June 26, 2006.)

Petitioner moved for a directed verdict of acquittal on the ground that the prosecutor failed to show that the crime was committed in Oakland County, but the prosecutor pointed out that venue was not an element of the crime. The trial court denied Petitioner's motion because the evidence, if believed, supported a verdict of guilty. (Trial Tr. vol. 2, 494-96, June 27, 2006.)

The trial court denied the motion for a viewing of Petitioner's truck where the alleged assault occurred because Petitioner had photographs of the truck and a video depicting the truck. (*Id.* at 542-44.) The court denied Petitioner's request for a jury instruction on assault and battery because Petitioner was not disputing whether there was an offensive touching; instead, his theory was that nothing happened. (Trial Tr. vol. 4, 798-99, June 30, 2006.)

The record fails to demonstrate that the trial court was biased or exhibited a deep-seated favoritism or antagonism that made fair judgment impossible. Appellate counsel, therefore, was not ineffective for failing to raise a claim of judicial bias.

### d. The Great Weight of the Evidence

Petitioner alleges that the jury's verdict was against the great weight of the evidence because the evidence was nothing more than a credibility contest and the alleged victim was not credible. The trial court addressed this issue on post-conviction review and concluded that Petitioner had

23

failed to show that the verdict was against the great weight of the evidence or that he was entitled to a directed verdict of acquittal.

In Michigan, the test for determining whether a verdict was against the great weight of the evidence "is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v. Musser*, 673 N.W.2d 800, 803 (Mich. Ct. App. 2003). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v. Lemmon*, 576 N.W.2d 129, 139 (Mich. 1998).

Because Petitioner was charged with violating MICH. COMP. LAWS § 750.520b(1)(a), the prosecutor was required to prove that A.T. was under thirteen years of age at the time of the crime and that Petitioner sexually penetrated her. *People v. Waclawski*, 780 N.W.2d 321, 350 (Mich. Ct. App. 2009), *appeal denied*, 794 N.W.2d 621 (Mich. 2011). Petitioner did not dispute A.T.'s age. Thus, the only question was whether sexual penetration occurred.

The statute defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MICH. COMP. LAWS § 750.520a(r). A.T. testified that Petitioner used his mouth and tongue to kiss her "private part," which she described as the part of her body where she "peed." (Trial Tr. vol. 1, 273, June 26, 2006.) This testimony was sufficient for a rational trier of fact to conclude that sexual penetration based on cunnilingus occurred. The prosecutor was not required to corroborate A.T.'s testimony. MICH. COMP. LAWS § 750.520h. The testimony of the complainant in a criminal sexual conduct case can be "sufficient evidence to establish a sexual penetration and support the jury's verdict." *People v. Robideau*, 289 N.W.2d 846, 850-51 (Mich. Ct. App. 1980). Furthermore, a reviewing court

24

will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution.

*People v. Passage*, 743 N.W.2d 746, 748 (Mich. Ct. App. 2007) (internal and end citations omitted).

The Court concludes that A.T.'s testimony did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Therefore, appellate counsel was not ineffective for failing to challenge the weight of the evidence at trial.

Even if Petitioner's claim was not procedurally defaulted, it would lack merit because the contention that the jury's verdict was against the weight of the evidence is a state-law argument, and a federal habeas court is allowed to review only issues of federal law. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Thus, Petitioner's weight-of-the-evidence argument is not a basis for habeas corpus relief.

### e.  Entitlement to an Evidentiary Hearing

Petitioner contends that he is entitled to an evidentiary hearing to establish whether trial and appellate counsel's omissions were sound strategy. He also wants to establish testimony from Detective John Robertson as to why the police did not follow proper forensic interviewing protocol when questioning A.T.

Petitioner first raised the issue of an evidentiary hearing in his motion for relief from judgment. The trial court denied Petitioner's request for a hearing on the ground that his motion for relief from judgment could be decided without a hearing. The trial court's failure to hold an evidentiary hearing on collateral review is not a basis for habeas relief, because alleged deficiencies in a state's post-conviction procedures "relate to a state civil matter, not the custody of a defendant."

25

*Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)). In this case, Petitioner is not barred from obtaining an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). Therefore, the decision to grant an evidentiary hearing on habeas corpus review is at the discretion of the Court. *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). The Court "must consider whether a hearing 'could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" *Dixon v. Houk*, 627 F.3d 553, 560 (6th Cir. 2010) (quoting *Schriro v. Landrigan*, 550 U.S. at 474), *reversed on other grounds by Bobby v. Dixon*, __ U.S. __, 132 S. Ct. 26 (2011).

Like the trial court, this Court finds that Petitioner's claims can be decided without an evidentiary hearing and that Petitioner's factual allegations, even if true, would not entitle him to habeas corpus relief. The Court therefore denies Petitioner's request for an evidentiary hearing.

### 3. Prejudice; Miscarriage of Justice

For all the reasons given above, the claims that Petitioner did not raise on direct appeal lack merit. Therefore, appellate counsel was not ineffective for failing to raise the claims on direct appeal, and Petitioner has failed to show "cause" for his procedural default of not presenting claims five through nine to the state appellate courts on direct appeal. For the same reasons, Petitioner's independent claim about appellate counsel lacks merit.

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause." *Tolliver v. Sheets*, 594 F.3d at 930 n.13. The remaining issue is whether the Court's failure to review the substantive merits of Petitioner's defaulted claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750.

The miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas

26

courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Thus, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate actual innocence, Petitioner must show that, in light of some new evidence, no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Petitioner has not produced any new evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to address the substantive merits of claims five through nine. Those issues are procedurally defaulted. Even if the claims were not procedurally defaulted, they lack merit for the reasons given above.

### IV.  Conclusion

Claims five through nine are procedurally defaulted, and Petitioner's remaining claims lack merit. The state court opinions and orders in this case did not result in decisions that were contrary to clearly established federal law, unreasonable applications of clearly established federal law, or unreasonable determinations of the facts. Consequently, Petitioner is not entitled to the writ of habeas corpus, and his petition is denied.

### V.  Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could

27

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find it debatable whether the habeas petition states a valid claim of the denial of a constitutional right or whether the Court's procedural ruling on Petitioner's procedurally defaulted claims is correct.  Nor would reasonable jurists find the Court's assessment of Petitioner's other constitutional claims debatable or wrong.  The Court therefore declines to grant a certificate of appealability.

 Finally, the Court notes that Petitioner was granted leave to proceed *in forma pauperis* in this Court.  The standard for granting *in forma pauperis* status on appeal requires a showing that the appeal is not frivolous.  *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002).  After thorough review and consideration of Petitioner's petition and for the reasons set forth above, the Court now finds that the issues presented by Petitioner's petition are frivolous. *Hence v. Smith*, 49 F.Supp.2d 547, 549 (E.D. Mich. 1999); Fed. R. App. P. 24(a).  Accordingly, the Court concludes that Petitioner could not take an appeal in good faith and that Petitioner should not be permitted to proceed *in forma pauperis* on appeal.

28

IT IS SO ORDERED.

<u>S/Lawrence P. Zatkoff</u>
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: December 27, 2012